Case No. 18-1040, Mack Mining, LLC Petitioner v. Federal Mining and EMS Review Commission, et al. Mr. McHugh for the petitioner, Ms. Dunbar for the respondent. May it please the Court, Counsel. My name is James McHugh, and I represent Mack Mining, LLC in this matter. And this case involves the application of what we'll call the record-keeping rule, which is 30 CFR 75-363B. And that rule requires that a record should be made of any hazardous condition and any violation of the non-mandatory health and safety standards found by the mine examiner. In this case, Mack contends that this is a fairly simple rule. In this case, the ALJ found that the examiner should have noted, in addition to what he did note in and if you want to follow along on the actual exam record, it's A-529, as you can find the exam record. The ALJ found that the examiner should have noted six areas where the coal accumulations along this slope belt were touching the belt and rollers. The problem is that the ALJ also concluded that the examiner, in this case, did not observe the conditions. And this created some of the... Is that really a fair description of what the ALJ found? I mean, when I read this ALJ decision, I actually thought that it was probably one of the best, if not the best, ALJ decisions I've ever read as far as its thoroughness and description of the law, pros, everything else. And it seems to be that the ALJ said there's no way he shouldn't have observed it if he didn't observe it because there was a plethora of coal pits. Your Honor, in response to that, I would just note the Court's attention to S.A. 25, which is page 25 of the underlying decision. And there the Court says that, I have found that the Secretary established that the accumulations had accrued over one shift and that Adam's examination from a moving vehicle precluded him from observing the accumulations and ignition sources on the far side of the belt. So the ALJ did, in fact, find that examiner Adams testified truthfully that he did not see these conditions. So this created a problem. And apparently recognizing the logical disconnect that the ALJ... But he also says at the end of the very next paragraph, in these circumstances, I find the respondent's examiner was highly negligent in failing to properly document the nature and location of the numerous accumulation hazards in the corrective action taken. And earlier in his opinion, he said that mine operators are strictly liable for violations that occur and that they don't get an out by saying that they didn't know about the violation. So taking all of that together, isn't that a finding there on page 25 that the examiner either knew or he definitely should have known if he had been doing his job properly? Your Honor, that's what the commission found, and that's how they tried to repair the damage that was caused by the ALJ's decision because they had to deal with this logical disconnect because the regulation itself says that a record shall be made of violations and hazards that are found. And as I was getting prepared for this case, I noticed that this court here did at least interpret 75363 in National Mining v. MSHA, 116th at 3rd, 520. And this court equated it with Discover. Is this in your brief? I found that as I was preparing for that case. It's not in the brief, Your Honor. Is this argument that you're making in the blue brief? You said in your opening brief that your client's inspector didn't observe these conditions, but that was in support of a factual argument that the conditions didn't exist at the time of his inspection. I didn't see a separate legal argument that the recordkeeping regulation applies only to what you actually see as opposed to what you should have seen. Well, Your Honor, in this case, the we believe it is fairly raised and we believe it's fairly raised because it's Would you point to where? Yes, Your Honor. The dissent raises this argument, right? The dissenter. The dissenter does, Judge Alford. And I found, I did find this in your reply brief, but Judge Katz is asking where it is in the blue brief. You want to show us? You say at page 19 the examiner did not observe at the time of the exam any of the individual areas. That's the closest I could find, but it was, as I said, all in service of the factual argument that the conditions didn't exist at the time. Well, Your Honor, in this case, we have maintained from the opening statement to the present that that examiner did not find these conditions. And that has been found to be the case from the opening statement to the present, that the examiner did not find these conditions. And we believe it's fairly included in the factual portion of our brief and the portion of our brief that talks about the fact that we did not violate 75363B. And in this court here in July of last year when you decided to consult case, the court said that it would take up errors that are fairly included or intrinsically related, I can't remember the exact words, to the elements. I mean, this is a legal question on the elements of the offense. Was this raised before the commission? It was raised before the commission in that we contended that Mr. Adams did not observe these conditions. I understand, but it's the same problem and it's the same forfeiture issue. I would say at page 3 of the petition for discretionary review that the regulation does not require more than what he wrote for what he observed. It requires him to write what he saw. Page 19, Adams did not see the belt rubbing of the PDR. Is this petition for discretionary review in your appendix? The petition for discretionary review, it is not, Your Honor. It is not. And facially, both the underlying judge and the commission were interpreting 363 throughout the opinion. So we think that this would fall under a situation like the court found in the consult case where it's inextricably intertwined. In addition, what happened here is that in the commission, Mock argued that they were confusing the record-keeping violation, which has one requirement, with the exam requirements under 360A1 and 362. And that's also mentioned in the decision. And those, unlike the record-keeping violation, those do have an adequacy provision involved in them. So what the commission did here was that they created this new rule and it superimposed this adequacy requirement to basically deal with what the judge had found. But this was not the secretary's position below. And we all know how deference works that it's based on what the position of the secretary is. The secretary's position was that the six areas had to be noted because they were present. This was also not the inspector's position. As we pointed out, the inspector specifically noted that he was not alleging an inadequate examination. He was only alleging an inadequate record. And it's contrary to the regulation itself as a matter of law. And what happened was the commission created this new rule that says that the adequacy requirement for the examination is superimposed on the record-keeping violation, but it's the first time this rule has ever been announced. Let's suppose that we assume for the moment that the examiner only saw what you contend that he saw. Still what was written down was slope needs cleaning in progress, which Adams himself, the examiner himself, testified meant that the entire slope needed cleaning. How is that, even taking that on its face, adequate? It's adequate, Your Honor, because it's long-standing practice. Mr. Adams said he'd been doing it since he got there, I believe, in 2007. And the court has several of the exam records that demonstrate that this is the case. Why does his practice establish when dealing with what this regulation requires? Does that mean that slope belt itself is like 3,600 feet long? Yes, Your Honor. So how is saying that that belt needs cleaning without identifying anywhere specifically along that 3,600 feet that it particularly needs cleaning, how is that an adequate report? The reason it's adequate, Your Honor, is because as Mr. Adams testified and as the examiner or the inspector, also Mr. Reynolds, agreed that the entire belt did need cleaning. What had happened is, as the court knows, due to a washback phenomenon, they were mining in a wet panel. As water would get on the belt, the belt's seven foot wide, but some of the coal would come off the ends, off the edges. So Mock had to assign additional men to, and they had 10 there on the day of the citation. And so it truly was some accumulations throughout the entire slope belt. And everyone knew that it was along the entire slope belt. Even if you read the transcript, there's a colloquy between Mr. Pence and the inspector where they go back and forth about, well, you know, if it had been like this but not touching the belt, would you have written the citation? And, you know, they never, he never really got the final answer on that. But you can tell from reading the colloquy that Mr. Reynolds agreed that the accumulations did span the entire belt. And, again, Mr. Which I assume is a fairly regular occurrence, right? The belts need cleaning in the ordinary course. So just to say the belt needs cleaning wouldn't really convey the seriousness of the six areas of 100 feet or something where there was friction, it was hot to the touch. It seemed like there was a pretty acute problem in some very specific areas, and none of that was conveyed. Well, I'd answer that two ways, Your Honor. First of all, those six areas, again, the testimony was, and both the commission and the ALJ, as I recall, found that Mr. Adams did not see those six areas. They were on the off side of the belt. So he didn't see them, and he was in a rubber tire ride, which is perfectly legal during his exam. And he, so he didn't see those, so he did not note those. However, as far as this belt goes, there were accumulations along the entire belt due to the situation. I mean, Mr. Adams had to examine, I believe, 11 different belts this morning at the end of his shift, doing the pre-shift for the following group of minors to come on. And there were accumulations along the entire belt. So he adequately described the nature of the accumulations and the location of them. And what he wrote was consistent with what has been required. It's not the, MSHA's never put any rules out on this that says, hey, you have to do something more than this. This is a first-time situation. There's nothing in the program policy manual. There's nothing in, MSHA's never, this wasn't even MSHA's rule. The commission created this rule. Okay. Anything else? Thank you. We'll hear from the gentleman. Good morning. May it please the Court. My name is Lynn Dunbar, and I represent the Secretary of Labor, Mine Safety and Health Administration. With me at counsel's table is Mr. Ali Beydoun, the counsel for appellate litigation in our office. In this case, the commission properly found that Mock violated the safety standard by failing to record the nature and the location of hazardous conditions related to a massive coal accumulation on a very long 3,500 to 3,600-foot-long slope belt. The testimony at the hearing was that these coal accumulations were obvious and extreme, and at some points up to 30 inches deep and six feet wide or wider under this coal belt, including numerous locations where the moving belt and rollers were in contact with the deeper accumulations. In total, the inspector counted 14 rollers and 105 feet of belt that were in contact with coal accumulations. Inspector Reynolds explained that the examiner's notation, needs cleaned and work in progress, were, quote, very nonspecific, noncritical type of wording that didn't say where it needed to be cleaned, how much of it needed to be cleaned, or how anything was in contact with the belt. Petitioner's argument seems to be that, if anything, they should have been cited for a violation of 75.360B11, which contains the requirements of what pre-shift examinations inspections have to include. And so that if the testimony is credited that he didn't see it, then how can he be cited for not reporting what he didn't observe? And instead, the citation, if any, should be, well, you didn't do a proper inspection. And so this whole regulatory selection doesn't make any sense, basically. Right. The commission addressed that argument when they said that these provisions for the on-shift examination and the record-keeping requirements are intertwined, and that it was within the inspector's discretion to select a more specific standard of record-keeping than a general standard of performing an adequate on-shift examination. Is there a difference in penalty or severity or gravity of record-keeping versus, you know, failure to inspect properly? I mean, I don't know. But I know in this case, for the record-keeping violation and for the accumulations violation, MSHA assessed them as the maximum significant and substantial and high negligence. So I don't know offhand whether a violation of an on-shift examination would incur a higher penalty than a record-keeping violation. I can't answer that question. I'm sorry, Your Honor. Okay. So is it your position that the argument raised by the dissenter, that is, that the ALJ failed to find that the examiner actually found the violation, that that's not properly before us? That the dissent's arguments, that the operator... Right. No. That the examiner, that the ALJ never found, never made a finding, that the examiner failed to report violations he found. That's the argument. That's true. The dissent makes. So is it your position that that argument is not properly before us because it wasn't raised? Yes. I would say yes, because the Secretary is not alleging an inadequate on-shift examination. Just assuming we find the issue, that issue preserved, The question is, the regulation says you have to record violations found by the examiner, and the interpretive question seems to be whether that is broad enough to encompass violations that the examiner should have found but did not. It seems like that would have arisen before. Is there any administrative precedent or learning on that point? Is that issue really arising for the first time in this case? It wasn't briefed, so I don't think it's arising in this case. So you're resting on preservation? Resting on what? Lack of preservation of that issue. Okay. The Secretary will rest on lack of preservation of that issue. You must be, because the regulation clearly says records shall be made of any hazardous condition and any violation, quote, found by the examiner. Right. It says that. Well, in this case, there was the initial citation that was issued for the accumulations violation, for the massive amount of accumulations on the belt. In addition to, and even on Exhibit P2, the first citation, the first sentence says loose coal was allowed to accumulate in excessive amounts. And then What are you reading from here? It is Exhibit P2, the accumulations violation, the first of the two citations. This is from the inspector, right? It is in the appendix. No, I understand it, but this is the inspector's report? This is the citation, the actual citation. So the first sentence, the inspector cites that loose coal was allowed to accumulate in excessive amounts. And then further down in the middle of the citation, he says, In addition, accumulations were in contact with the moving belt and rollers. So here, the examiner obviously saw these excessive amounts of accumulations, and the record-keeping violation is based on this first accumulations violation. So it's really more than whether the examiner saw the accumulations actually in contact. He saw the massive accumulations, and he failed to note that the accumulations were anywhere close to the belt and rollers, let alone touching the belt and rollers. Here's another. He says, the examiner says, this is in the citation, The examiner has not properly recorded hazardous conditions in the examination record as were found to exist. And I would argue that Found to exist by who? By the inspector, by the incident inspector. It doesn't say that. That's passive. It doesn't tell us who the actor is. It doesn't tell us what? Who failed to find. Well, the inspector testified. And under the rule, under the regulation, it has to be the examiner has to fail to find. Right. But that doesn't tell us that. Well, the inspector testified that he saw, he observed the belt just a couple of hours after the examiner observed it. And he believed, and the judge credited the inspector's testimony, that the accumulations had existed for several shifts and were in contact with the belt and rollers at the time of the MOCS examination. Which is enough for you to win on the question whether the violations existed at the time. Right. That's a different point from the question whether the company's examiner saw them. Well, the inspector testified that based on the conditions that he observed, the inspector believed that Adams had to have observed accumulations contacting the belt and rollers in at least some of those locations. The judge found that driving up the belt may have, what was the word the judge used, made it difficult for the examiner to see on the far side of the belt. But not all of the accumulations were on the far side of the belt. Some of them were observable on the travel way side of the belt. But here, the examination record contained no information whatsoever about the nature and location of those massive accumulations, one, and the ignition and fire hazards, two. Let's suppose an examiner, there are violations that are obvious that any prudent examiner should have seen even from the travel way side of the belt. But what is written down in the examiner's inspection report is basically everything is fine. The agency inspector comes along just a few minutes later and documents all of these violations of accumulation that were obvious to her when she comes along just a few minutes later. So if the company's, the operator's defense is their standard defense, well, he didn't see those. The examiner didn't see those, didn't observe those. What kind of, I guess, regulatory problem does it create for your agency if they're able to put forward a defense like that to the record-keeping violation? I don't think there's a way that the agency could prove what the examiner saw. I mean, other than to say that what we have in this case, the inspector testified that the accumulations were in existence and that they were in contact and that the examiner must have seen at least some of them. I mean, this is the best the agency has. Thank you. Anything else? No. Okay. Mr. McHugh, you used up your rebuttal time, but you can have an extra minute. Okay, thank you. Thank you. Just a few quick points. I would note in page 19 of the brief for the petitioner, it says, to sustain this citation, the inspector, the ALJ, and the commission go beyond the evidence and the plain meaning of the regulation by contending that the examiner, Adam, saw what he did not see and that 75363B says what it does not say. So we would contend we've raised the issue. And it's implicit in the rule anyway. It's an element of the offense. As far as the point on regulatory gap that Judge Wilkins raised, I want to follow up on that very briefly. There is no regulatory gap here because all the commission would have had to have done or the secretary would have had to have done is charge under two other regulations that they had at their disposal. And I wanted to follow up on the second part of my answer to Judge Wilkins. I didn't finish it, but as I was back there, I was thinking about it, and that is that there was a big washback event between the time of the exam at 6 a.m. and the time of the inspection at 8 a.m., and that accounts for some of the additional accumulations along the belt. And finally, I just wanted to point out, I mean, from a rule, from purely regulatory construction issue, nobody found that this regulation was ambiguous. So why is it being interpreted? So if it's ambiguous, there's a new rule that's inconsistent with the regulation. That's a problem. Okay. Thank you. Case is submitted.
judges: Tatel, Wilkins, Katsas